Welcome you here to New Orleans. We have a very light docket this morning. The first case, well, I'll just, I, nevertheless, it seems reasonable to try to adhere to your time limits, which are, which you can find from the podium. When the yellow light comes on, you have two minutes. When the red light comes on, we ask you to conclude your argument unless you're answering a question from the court. We are familiar with the briefs and record excerpts. We have not necessarily read the entire record and appreciate record citations when those are pertinent. So the first case of the morning is U.S. v. Lexus Sanchez Weaver, number 2560269, and we'll hear first from Mr. Mims. Good morning. May it please the court? Yes, sir. There are two issues in play here. One concerns the suppression of the search warrant. The other concerns the suppression of the statement given after arrest. I'm going to address the search warrant issue first because, frankly, without, without the search warrant evidence, the statement really doesn't make any difference. As the court is aware, the legal conclusions concerning the search warrant are subject to de novo review. The search warrant was based upon three controlled buys from Lexus Weaver at his house. The controlled buys were described in the search warrant, and, frankly, in a nutshell, if three controlled buys don't provide probable cause for a search warrant, then really nothing does. To me, that's a textbook example of probable cause for a search warrant. In this case, the good faith exception would apply. The affidavit was clearly not bare bones. As I've said, it detailed three controlled buys of drugs from Lexus Weaver's house, so the officer's reliance on the affidavit was objectively reasonable. A bare bones affidavit would be one that said simply, for example, the confidential informant said Weaver sells drugs from his house. That would be bare bones. We have far more than this with the description of three controlled buys. I would like to address some of the points raised by Weaver in his brief. Again, as I've said over and over, it's not a bare bones affidavit. The case is cited by Weaver in support of the bare bones affidavit. Those are truly bare bones. Why do you think Judge Mills found otherwise? Your Honor, I cannot explain why he found otherwise. I can say that he cited, for example, the Barrington case. It was really the main case that Judge Mills cited in his opinion as an example of bare bones. In Barrington, the affidavit stated only that the officer received information from a confidential informant who is known to the officer and has provided information in the past that has led to arrests and convictions. That's the example from Barrington of bare bones, and I don't disagree. That's bare bones. We don't have that. We have that after each purchase, the CI was searched for money and contraband, and none was found. Yes. I do want to address that because there were three things that seemed like the district court stated in its opinion to support its finding. One of those, it said the CI was searched and no contraband found. That's standard language with any controlled buy, of course. They search the CI before making the buy to make sure he has no contraband on him so he's not setting somebody up, and they search him when he comes back after he's given the contraband back. They search him again to make sure he hasn't kept any for himself or anything like that, and that was explained in the affidavit, and in fact, it was also explained by the officer at the hearing on the motion to suppress, but the affidavit does clearly state on each of the three controlled buys, the affidavit states the officer purchased narcotics from Weaver through a CI, and then he describes the process, how they search him, they keep him under surveillance, they give him audio video surveillance equipment. So the fact that no contraband was found during the search was clearly, it was set forth in the, and it probably could have been set forth a little bit clearer in the search warrant affidavit, no doubt. I wish it had been just a little bit more clear, but But that's not the test. Yes, ma'am. And like I said, the officer did explain that during the motion to suppress hearing, and the judge, Judge Kelly and the officer, they're used to control buys. I'm sure when they read it, they understood, Judge Kelly understood what the officer meant, that he was searched before and after to make sure he wasn't bringing drugs to the transaction or keeping drugs from the transaction. The other thing that the district court mentioned in support of his ruling was that the affidavit did not specify amounts or had the drugs tested for authentication. The amounts are not important. Again, the officer had a very good explanation at the hearing as to why he didn't specify amounts or give a very specific date, and that's because it's a dangerous business we're dealing with, and we don't want the CI known if we can help it. And drug dealers oftentimes keep a log of who they sell to and amounts and what dates. And so they didn't want to specify an exact date. That's why they gave a date range. They didn't specify exact amounts because they don't want the weaver to be able to figure out who the CI is. But it really doesn't matter how much the amount is. If we send a CI to buy drugs from a drug dealer, it doesn't matter if he buys an eight ball or a kilo. Either one supports probable cause. So the amounts aren't important. And as far as having the drugs tested afterwards, to really have them tested, you've got to send them off to a lab. And that may take months and months, and by then, of course, your probable cause for the search warrant is not fresh. You can't send drugs off to have them tested. But the officer knew what they were buying. They were buying crack cocaine. He sees that he's familiar with crack cocaine. He looks at it. It looks like crack cocaine. It appears to be. That's what he sent the CI in to buy. And we're not trying to beyond a reasonable doubt to a jury for the search warrant. We just need probable cause to get a search warrant. But those were the issues addressed by the judge in the district court opinion. And I think we've shown probable cause in this case. You want to move on to Miranda? Yes. So there's a video. I believe it was Exhibit 4 to the motion to suppress hearing. And I believe that should be in evidence up here. And the video shows clearly so the court doesn't have to determine or rely upon the statements as to what was said. The court can watch the video and see exactly how this was played out. Again, the validity of the waiver is subject to de novo review. The whole point of Miranda is for the suspect to be informed of their rights. In this the rights were read to Weaver. And Weaver acknowledged he understood his rights. As the officer testified during the motion to suppress hearing, he said, do you understand your rights? And he said, Weaver gave a response like, uh-huh. You know, he didn't say yes or no, which would have been clear. But he did give a verbal acknowledgement he understood his rights. The reading of the waiver form itself is not necessary. And by talking after being read his rights, Weaver has clearly waived his rights. It's an applied waiver. A couple of Supreme Court cases that talk about it, and I apologize for this not being in our brief, but it would be Butler and Topkins are two different Supreme Court cases that deal specifically with that issue. And I want to look at something in Weaver's brief that I found very interesting. Footnote number three on page 30. Weaver says he does not contend that the officer was required to read the waiver of rights. And I had a question. If Weaver, if the officer is not required to read the waiver of rights, then really why are we even here on this issue? Weaver says he was never given the opportunity to waive his rights or to understand the consequences of the warning. But the rights themselves, which were read to him verbatim, inform Weaver of the consequences. The waiver doesn't inform of the consequences. It's the Miranda rights themselves that inform the defendant of the consequences of speaking. Weaver was informed of that. He acknowledged that he understood his rights. And again, talking after being informed is a waiver. There were several cases cited by Weaver in his brief with specific examples of deceit. These all come from the Morgan case, which cited three cases that talked about deceit being an issue. But frankly, all of those cases give very specific examples of deceit. Did Weaver have a prior conviction record? Your Honor, I don't know if he did. Just wondering. I should know that answer. I think he was charged with 922 G1, and so I believe he would have had a prior conviction, but I can't swear to it. He was someone, I will say, I do know he was someone that was familiar with the law enforcement experience. He had many experiences with law enforcement, so he would have additional knowledge. He wasn't a newbie to the Miranda warnings. In this case, I don't see where there's the deceit. I don't see how, you know, it can't be the failure to read the waiver form because they've admitted that's not required. And I would point out a couple of cases on this. So far, SOFFAR v. Cockrell case cited in our brief, as well as U.S. v. Bell, both from the Fifth Circuit, and they state specifically, trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandonment. Any deceit in this case at all doesn't rise to that level. Basically, what they're arguing is when the officer read the Miranda rights to Weaver and he got down to the waiver form itself, instead of saying this form by signing here says you're waiving your rights, he simply said, hey, this says I've read your rights to you. And he signed the form. I would point out he did sign the waiver. He had it in front of him. He signed it. That's the only potential deceit in this is he didn't specifically say by signing this form you're waiving your rights. He said by signing this form, you acknowledge I've read your rights. Yes. It's a little bit different. And frankly, I wish he had said this form says you're waiving your rights. It would make this case a lot simpler for me. He didn't. But that's not deceit that rises to the level of suppressing the statement. Your Honor, I really have nothing else to argue. Everything is in our brief. I'm happy to answer any further questions you have. But if there's nothing else, I'm going to surrender the rest of my time. That's fine. You have an opportunity for rebuttal. Yes, ma'am. I don't often get to have to say that to the government. All right. Mr. Sieg. Good morning, Your Honors. May it please the Court. Kyger Sa representing the appellee in this case. No problem, Your Honor. Representing the appellee in this case, Lexis Weaver. We would ask this Court to affirm the district court's granting of the motion to suppress. I would like to respond to the prosecution's first argument regarding the search warrant. We believe that the affidavit itself was a bare-bones search warrant submitted by Officer Mitton. And mainly, this is due to the search warrant containing nothing but conclusory statements. The prosecution and I disagree on what a conclusory statement is. But in this case, if we boil down the essence of that underlying facts and circumstances, those three paragraphs, where it lays out that a confidential informant sold something, an unknown quantity of something. Apologies. Bought an unknown quantity of something from Mr. Weaver from an unknown amount of money. Well, let me ask you this, counsel. Yes, Your Honor. So I think I'm looking at the search warrant. The first sentence of the second paragraph says, between the dates of 2-5-2024 and 2-19-2024, CI at the direction of surveillance of myself and other law enforcement personnel purchased an undisclosed amount of crack cocaine from Lexis Weaver at X Greensboro Street XX. So just focusing on that, I mean, what more detail, in your view, needs to be there for the warrant not to be bare bones? Of course, Your Honor. Thank you. We would first take action with the allegation that it was crack cocaine. Again, at the suppression. Yeah, but I'm not sure you can do that. My question is, what more detail would you need for it not to be bare bones? Okay, you may say, no, no, it's not crack cocaine. But the issue is whether it's a bare bones warrant. So if we look at the bare bones affidavit, Your Honor, and the case law, this panel actually heard a case back a few months ago, and I've submitted it in front of you in hard copy, and I apologize for the late filing. I filed it via Rule 28 last night. It's the U.S. v. Hernandez case, where this court had a similar issue involving a search warrant that was based on the bare bones claim. There, in this case, and I think this is an important detail that has not yet been discussed in oral argument, is that the basis of the search warrant falls on that reliability of a confidential informant. Yeah, but again, to return to my question, what more detail do you need in the sentence I just read for it not to be bare bones? I know you're saying it's bare bones. So what else is necessary? Your Honor, I believe there, and I apologize for not answering it directly. The foundational facts and background information to establish the confidential informant's reliability needed to be inserted into the affidavit. I don't know if those details in the affidavit, the crack cocaine and the possible address, satisfy the requirements of what is not a bare bones affidavit. So you need more facts about the reliability of the CI? That's correct. Okay. Well, I mean, again, though, the paragraph, I guess the paragraph before that does have facts about the reliability of the CI. Your Honor, we would suggest, we would submit that that is nothing but boilerplate template language that almost every affidavit must include when there's a drug transaction between a confidential informant and a defendant. Almost at no point are in any of these cases that we've cited in our brief and in the government's brief, that language is included in every single one of them. Well, it also says it had been under continuous surveillance. Yes, Your Honor. So that's not bare bones, is it? So our position on that is that yes, constant surveillance was part of this. We do not dispute that. However, the case law suggested in our briefs and in the prosecutions state that the controlled, excuse me, a constant surveillance during a drug transaction is not enough. You have to have independent investigation prior to those purchases. I think it says more than that. I mean, because, number, it's three different drug buys and then it's, I know it's in here, but CI was under continuous surveillance by law enforcement prior to each purchase, during each purchase, and after each purchase until CI was searched again. And then it says that at the direct, at the surveillance of myself and other law enforcement personnel, CI purchased. It says that. Yes, Your Honor, you're correct, and we don't dispute that. There were three surveillance. But I mean, this isn't a case, in this one, just on a quick read, it looks as if you had a CI who went in and said he saw meth and he comes out and tells the cops nothing, and I don't know whether there's anything underlying there about surveillance, but, and then they went in. But that's one of the things that distinguishes the Hernandez case from this case. We have all of this, all of these fundamental facts, this background detail that established the CI's reliability prior to the controlled substance. We don't have that here. We only have a mere hunch that Officer Mitten and this confidential informant believed that Mr. Weaver was selling drugs. There's nothing in the affidavit to suggest that Mr. Weaver was selling drugs. Well, in Hernandez it said that agents did not independently corroborate the CI's information prior to obtaining the search warrant as immaterial, as the CI was not an anonymous tipster. That's correct. And so, again, the distinguishing... They didn't corroborate it beforehand and it's immaterial. The distinguishing factor there is that the CI in the Hernandez case had personal observation and conversations with Mr. Hernandez about drugs within 48 hours of that affidavit and Mr. Hernandez was already being investigated by DEA and HSI for methamphetamine trafficking. Those established the veracity and the knowledge of the confidential informant in Hernandez. We do not have that type of detail here. The only things that are alleged in the affidavit are that the defendant, Mr. Weaver, was selling drugs and that a CI just shows up at his house randomly to purchase drugs on three separate occasions. There's nothing to establish the confidential informant's reliability or knowledge prior to those controlled buys. If we look at all of the other cases submitted, there's background information in every single one of these cases. You look at Shugard, United States v. Shugard out of this circuit. There was independent corroboration once the officers received a tip regarding drug dealing. Officers go out, surveil prior to a controlled buy, watch, I believe it's four handheld transactions, they come back, ask for a search warrant, and they have him, have a confidential informant go and do a controlled purchase. They're all of these things that come prior to the controlled buys themselves. We would submit that a similar example would be watching a movie. You get to the very end in this situation, you see the ending, but you haven't watched the first hour. But they got to the end three times. Well, we would submit that the first one was unconstitutional, which would then be second and third. It's a similar argument to Fruit of the Poison Street. What about the good faith exception? The good faith exception only can apply if this court determines that the affidavit itself was bare bones, which is our argument based on these conclusory statements by officers. Wait a minute. Well, there is, that's true, that's true. If it was a faulty affidavit, they could have good faith. Yes, Your Honor, that's correct. But you don't have a case squarely on point with three controlled buys. Your Honor, I do not. And I've scoured Westlaw for this information. But like, as opposing counsel stated, one controlled buy is generally enough for probable cause and for a, for a sufficient affidavit. But most of those search warrants include that background information and foundational facts that establish the confidential informant's reliability, veracity, and knowledge. And there's none of that included in this affidavit. So if, from now on, if a confidential informant just purchases drugs without any hunch that this person is a drug dealer, we would submit that that isn't sufficient either. You have to have that background independent probable cause for a magistrate to issue a search warrant upon. Your Honor, would you like for me to move on to the Miranda issue? Sure. Thank you. For a waiver to be valid, the waiver, whether explicit or implicit, must still be bound by the confines of Moran v. Burbine's voluntary and knowingly prong. Our entire argument rests on the first prong, which is this was an involuntary statement by Mr. Weaver. We don't even get to that knowingly prong of whether or not he understood his rights because we can't get past the first prong of the statement that Officer Mitten made to Mr. Weaver, I've read you your constitutional rights. Don't disagree with that. He slides the document towards Mr. Weaver and says, sign this document. It's a mere acknowledgment that I read you your rights. Mr. Weaver signs it. They start talking. That's the entire issue. It was a deceitful statement as evidenced by Officer Mitten's own admission at the suppression hearing and the district court's finding that it was deceptive in nature. This is very dissimilar from the cases that opposing counsel has cited. This was a misrepresentation of a law. It was not a misrepresentation of fact. And I think that's the huge difference here. If we look at the 11th that a misrepresentation of law is insufficient to uphold a Miranda waiver. I thought, maybe the other side will correct me if I'm wrong, but I didn't think the government was relying on the signed form here. That it was instead saying that the rights were implicitly waived in the oral colloquy. I believe, excuse me. Yes, Your Honor. I believe that is the government's position. However, we would disagree with that because it happened. We have it on record. We have it in the evidence. You can't just eliminate the statement that, hey, here is a document. Would you please sign this saying that I read you your rights? Have him sign it. And then now that it isn't in their favor, just disregard it. Because the mere statement... You're saying that the deception, if that's what it was, vitiates any consent or vitiates any sort of voluntary... You're saying it makes it involuntary that he was talking to the police? Yes, Your Honor. I believe that is what I'm trying to argue. Because by telling a person that, here are your rights. Sign it saying that I've read these to you, but not that it's an actual waiver of the rights themselves. That's a misrepresentation of Miranda. It's not just saying that you don't have the right to counsel. It's not telling him, hey, you are voluntarily speaking with me. It's just saying, sign this document and let's begin talking. But it doesn't give Mr. Weaver the opportunity to respond, to review the document, to read that waiver language paragraph that's included in the record on 95. He was never given that opportunity. If we look at the Brasenio case, one of the other cases that I've printed out and submitted via Rule 28, Brasenio, it was a Spanish client who was being interrogated by an officer who wasn't fluent in Spanish, but was conversational and was able to read in broken Spanish those Miranda rights. The difference there is once the officer got to the end, he slid a card over to Brasenio that had in Spanish the rights. 25 seconds elapsed as Brasenio was looking down at the card. The officer believed he had read those rights in Spanish and then began talking to him. And Brasenio confessed ultimately. We never had that opportunity here. Mr. Weaver was not given the really review the document. And by being told that the document was merely an acknowledgement form and not a full waiver, that's deception. He was told verbally the Miranda rights, correct? Yes, Your Honor. He was. He was read those Miranda rights, but he was not told, do you want to speak with me now? Do you understand your rights? Well, they say you can remain silent, you can ask for an attorney, right? That's right. But if you look at the statement that Officer Minton states after Weaver signs the document and slides it back, he goes, let's start talking. Let's, I have some stories for you, Mr. Weaver, and I need to hear what you say. Yeah, but that's only after he told him you have the rights to remain silent, right? That's right. Yes, Your Honor, you're correct again, but the deception comes from the mere acknowledgement that I've read you your rights without an opportunity to actually waive them. You're saying that, I think what you're saying is whatever voluntary, whatever consent or acquiescence there was in the verbal colloquy was somehow erased by the deception associated with the written form. That's correct, Your Honor. And what is your best, what's your best case for that proposition? There's not a case that is specific on this. However, the best three cases are the 311th Circuit cases where, that I cited in our brief, the Beal case, for example, the Morgan case where officers misrepresented the law by saying that one of the defendants said, what would you do in this situation? He's like, it's okay if you talk, the officer tells the defendant, it's okay if you talk to me. That completely erodes the constitutional protections that Miranda grants these defendants. If you're saying that it's okay to talk to me, you're violating because you're saying that what you tell me won't incriminate you. But it did in that case, and the 11th Circuit reversed it. That's similar to what we have here. By telling Mr. Weaver, this is just a document saying that I read them, let's talk, he's fully incriminated himself at this point. And that's why we believe that the Miranda issue should weigh in the district court's favor based on all of the deferential findings, the evidence in light of the prevailing party, which was Mr. Weaver in this case. All of that should fall, and this court should affirm that motion to suppress. Your Honors, I would like to touch on, if there aren't any other questions on Miranda or the search warrant. I would like to touch briefly on one issue that was raised. It was a procedural error where the magistrate judge in this case on the search warrant, we believe that there was procedural error based on the officer failing to hand sign the search warrant, that the search warrant request was done via FaceTime and not in person, and that the officer mitten was not put under oath during the search warrant request via FaceTime with the judge. I'm not saying that all of these errors individually would possibly reverse the case in our favor. I did want to bring it up to this court's attention because we believe that the cumulative nature of those errors, in addition to this bare bones affidavit issue where there was no reliability information provided about the confidential informant, could result in an affirmance from this court. Those are errors. If they're errors at all, they're errors in state law, right? Well, it would still involve a federal question of law. It was issued in state court, but we do believe that the violation of the Fourth Amendment has still been violated based on those... Does the Fourth Amendment say that an affidavit for probable cause has to be sworn to and signed by the magistrate in person? I believe it does, Your Honor, and our position would be that... I don't remember. I don't think it does. Oh, not directly in the Fourth Amendment language, but if we look at other case law from this circuit in precedent, then we do find that judges, you have to sign them in person. There's a procedure to verify the rights of the Fourth Amendment, but you can look at all the circumstances, it seems to me. Yes, and again, not individually. We're not asking for it to be an individual finding. However, cumulatively, along with the affidavit itself, we believe that that is enough error in this case to result in this court affirming the motion to suppress. Thank you, Your Honors. Thank you. Thank you. Mr. Mims. Your Honor, on the issue of the procedural error alleged by the weaver, I would just like to point out that, first of all, the good faith of the officer would still apply. The officer is following the procedure set forth by the court. Also, I would point out that the affidavit in support of the search warrant was signed under penalty of perjury. They're doing a FaceTime method of doing this. That's not so odd as to raise a big red flag to the officer, this is bad, I can't do this. We do telephone search warrants in federal court all the time. I'm not here to argue whether it technically follows Mississippi law or not. There was some confusion with the COVID orders and whether they still apply or didn't apply. I'm just saying that from the officer's standpoint, it's not so odd that he should think, wait a minute, this is wholly wrong. He's following what the local judge says do, he should still be entitled to good faith on that issue. On the issue of the statement, I would point out a couple of things. One, going back to Morgan, Morgan does talk about, it says specifically in the Morgan case, police misrepresentations of law are much more likely to render a suspect's confession involuntary than misrepresentations of fact, which generally are not enough. I disagree with Weaver's counsel on this issue when the officer says, this form just says, I've read your rights. That may be a misrepresentation of fact. It's not a misrepresentation of law. The cases cited within the Morgan case that talk about deceptions, they all have to do with one of them talked about the agent told him that signing the form would not hurt him. The other one said, another case said, the defendant was told that honesty wouldn't hurt him. In the third case, the officer explicitly assured the defendant that anything he said would not be used to prosecute him and that the defendant would not be charged for any statements or evidence collected on the night of the robbery. Those are deceitful things. You say, hey, talk to me. It's not going to hurt you. Our officer didn't say that. Our officer read him his rights and said, hey, just sign here. It shows I've read your rights. That's not deceitfulness. First of all, it's not a misrepresentation of law, and it's not designed to deceive him, to harm him, and hurt him. Finally, going back to the search. Oh, one other thing on that. I find it interesting, the Brasino case cited by Weaver's counsel. Brasino says a waiver need not be explicit. In other words, you don't have to sign a waiver form. Rather, the waiver of Miranda rights may be implied through the defendant's silence, coupled with an understanding of his rights. He acknowledged he understood them. You can see that in the video. And a course of conduct indicating waiver. Again, speaking after hearing the rights would be that course of conduct. And I would point out that the Brasino court did find that the admission of the statement in that case was appropriate. Now, turning finally to the search warrant issue, I would just point out that Weaver's counsel talks about independent corroboration. The control buys are independent corroboration. The way this works is the CI says, hey, I know I can buy drugs from Lexis Weaver. OK, well, that's not enough to get a search warrant. You have to corroborate that. The independent corroboration is the control buys as detailed in the affidavit. Those are the things that corroborate the reliability of the CI. You may have a CI that you're dealing with for the first time. He doesn't have a track record of reliability, but that doesn't preclude you from getting a search warrant. You take that CI, you make one or two or three control buys, and you've now corroborated your search warrant, even if it's a brand new CI. I would point out, just highlight the U.S. versus FOIA case, a Fifth Circuit case from 1994. It says, as reflected in the affidavit, after he received information from the confidential informant that cocaine was being sold out of the apartment, he set up a control buy. That one control buy was sufficient to have probable cause in the FOIA case. In our case, we have three control buys. I would point out another case, U.S. versus Moore case. It's a Sixth Circuit case. I recognize it's not binding on this court, but it's cited in our brief, and it does lay out a very detailed explanation of how control buys provide probable cause for a search warrant. That's all I have. Thank you. I appreciate your time. All right. Thank you, sir.